IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


GRAY HOLDCO, INC.                )
                                 )
          Plaintiff,             )
                                 )
     v.                          )          Civil No. 09-1519
                                 )
RANDY CASSADY, et al.,           )
                                 )
          Defendants             )


MEMORANDUM OPINION

Mitchell, M.J.


          Presently before the Court are Defendants, RWLS, LLC's
("RWLS") and Randy Cassady's ("Cassady")motions for judgment on the
pleadings as to Plaintiff, Gray Holdco, Inc.'s ("Gray") claim that
Cassady's alleged violation of a contract with Gray gives rise to
causes of action for breach of contract (count one), intentional
interference with existing contractual relationships (count two),
unjust enrichment (count three), and civil conspiracy (count four).
For the reasons stated below, Cassady's and RWLS's motion for
judgment on the pleadings (Docket Nos. 49, 54) will be denied.

     I.   Facts

          Gray Wireline Services, Inc., ("GWSI"), is a wholly-owned
subsidiary of Gray Parent, Inc., which, in turn, is a wholly-owned
subsidiary of Gray.  GWSI provides wireline services to the oil and
gas industry with operations in several states, including Texas and

1

Pennsylvania.

In June 2006, GWSI hired Cassady as the District Manager in its Granbury, Texas location. In this position, Cassady oversaw the daily operations of the Texas facility and interacted with wireline equipment suppliers and manufacturers. He also had access to confidential information concerning GWSI's financial performance and business strategies.

After Cassady had been employed by GWSI for approximately six months, he and Gray entered into a New Hire Plan Option to Purchase Stock ("Option Agreement"). Cassady was granted a number of options to purchase shares of Gray in return for agreement to certain terms and conditions. Relevant to this matter, Cassady "agree[d] to be bound by the non-competition, non-solicitation, standstill, non-disparagement and/or confidentiality provisions as set forth in Schedule I hereto." Pl.'s Comp. ¶ 12. The non-competition and restrictive covenants included in Schedule I provided that, inter alia, Cassady would not utilize company proprietary information other than for advancing GWSI's business purposes, would not compete with GWSI after his termination for a period of two years and within a broad geographic region, and would not solicit GWSI employees to terminate their employment with GWSI.

In 2008, Cassady was transferred to Louisiana to take charge of GWSI's offshore operations. During this year, Cassady also spent a number of months overseeing a project in GWSI's

Pennsylvania District, and, eventually in March 2009, became the permanent District Manager of GWSI's Pennsylvania operations. In July 2009, Cassady was promoted to Region Manager. With his new position, Cassady received access to additional GWSI confidential information and worked directly with GWSI's most significant customers.

On September 21, 2009, Cassady resigned from GWSI. Shortly thereafter, Cassady and Matt Gray, another former GWSI employee, established RWLS, a cased hole wireline company that competes directly with GWSI in Pennsylvania. Cassady solicited GWSI employees to join RWLS.

II. <u>Procedural History</u>

On November 13, 2009, Gray filed the present action against Cassady and RWLS requesting money damages and injunctive relief. According to count one of the complaint, Cassady breached the terms of the Option Agreement by soliciting current and prospective clients and employees of GWSI, by misappropriating and using confidential and proprietary information belonging to GWSI, and, by engaging in a business in direct competition with GWSI both during his employment and after his termination. Count two of the complaint alleges that Cassady's breach of his contractual obligations to Gray was made at the direction of and with the knowledge of RWLS and, accordingly, RWLS's activity in this regard constituted a tortious interference with contractual relations.

Count three avers that Cassady's breach of the Option Agreement unjustly enriched Cassady and that RWLS was unjustly enriched by knowingly profiting from Cassady's breach. Finally, count four outlines a civil conspiracy between Cassady and RWLS to unlawfully solicit GWSI's customers and employees, to engage in competition with GWSI in violation of Cassady's contractual obligations, and to misuse GWSI's confidential and proprietary information. Under each count of the complaint, Gray averred that it has suffered monetary damages and requested compensatory and punitive damages and injunctive relief.

On the same date it filed its complaint, Gray filed a motion for a preliminary injunction seeking to enjoin Cassady and RWLS from conducting business that it contended was in violation of the restrictive covenants contained in the Option Agreement. The parties engaged in expedited discovery and, on January 12-13, 2010, this Court conducted an evidentiary hearing on the preliminary injunction motion. The Court concluded that Gray did not meet its burden entitling it to relief under Fed. R. Civ. P. 65 and denied the motion for a preliminary injunction (Docket No. 37). Both Cassady and RWLS have now filed Fed. R. Civ P.12 (c) Motions for Judgment on the Pleadings, or, in the Alternative, Motions to Dismiss under Fed. R. Civ. P. 12(b)(6). (Docket Nos. 49, 52 respectively).

III. <u>Standard of Review</u>

Under Fed. R. Civ.P. 12(c), judgment on the pleadings will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law. <u>Rosenau v. Unifund Corporation</u>, 539 F.3d 218, 221 (3d Cir. 2008). A court confronted with a Rule 12(c) motion applies the same standards as apply to a failure to state a claim defense under Rule 12(b)(6) and accepts the truth of all factual allegations in the complaint and draws all reasonable inferences in favor of the non-movant. <u>Revell v. Port Authority of New York and New Jersey</u>, 598 F.3d 128, 134 (3d Cir. 2010). In order to survive a 12(b)(6), and a similar 12(c) motion, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (internal quotation omitted).

IV. <u>Discussion</u>

A. <u>RWLS's Argument</u>

RWLS contends that Gray, due to its status as the twice-removed parent company of GWSI, does not have standing to pursue this matter. Intertwined in this argument is RWLS's position that Gray is unable to show that it, the parent company, has suffered any damages and has thereby failed to legally substantiate its claim of intentional interference with existing contractual relationships. RWLS also asserts that Gray's failure to state a claim for intentional interference with contractual relationships

is fatal to its causes of action for unjust enrichment and civil conspiracy.

Initially, the Court rejects RWLS's position that Gray lacks standing to pursue its claims against RWLS. As RWLS acknowledges, the three causes of action directed against it are predicated on the alleged breach of covenants contained in the Option Agreement entered into between Gray and Cassady. Gray's claims are thus based upon its rights as a party to the contract and, as such, has standing to bring this action. See eds Adjusters, Inc. v. Computer Sciences Corporation, 818 F.Supp 120, 121 (E.D. Pa. 1993)(shareholder may bring direct claim against wrongdoer where there is contractual duty between wrongdoer and shareholder). See also Tyler v. O'Neill, 994 F. Supp. 603, 609 (E.D.Pa. 1998) (where shareholder has pled distinct injury, the action by the shareholder is direct, not derivative).

The more difficult question is whether Gray, as a parent, has sufficiently pled that it has suffered damages for injuries allegedly suffered by its wholly owned subsidiary, GWSI.[1]

To set forth a legally sufficient cause of action for

_____

[1]
        Neither party has offered the Court guidance as to whether New York or Pennsylvania law controls Gray's claims against RWLS. RWLS merely asserts, without discussion, that Pennsylvania law applies; Gray appears to accept this legal conclusion, yet cites primarily to New York law cases to support its arguments. At this juncture, the Court will assume that, because the relevant activity occurred in Pennsylvania, its law will govern.

tortious interference with contractual relations, a plaintiff must show: (1) a contractual relationship or a prospective contractual relationship between plaintiff and a third party; (2) purposeful action on the part of the defendant, specifically intending to harm the existing relationship, or to prevent a prospective relationship from happening; (3) absence of privilege or justification on the part of defendant; and (4) the occasioning of actual legal damage resulting from defendant's conduct. <u>Bey v. City of Philadelphia</u>, Civil Action No. 05-388, 2006 WL 3242276, at *6 (E.D.Pa. November 6, 2006) (citing <u>Pelagatti v. Cohen</u>, 536 A.2d 1337 (Pa.Super. 1988)).

RWLS argues that Gray has not asserted that it has incurred economic damages as the record indicates that the alleged damages are the speculative lost revenues of its subsidiary, GWSI. RWLS contends that Gray, while availing itself of the benefits of the corporate form, is now seeking a "reverse piercing of the corporate veil"[2] to claim GWSI's economic injuries as its own.

Generally speaking, parent corporations and subsidiaries are regarded as separate legal entities. <u>Kiehl v. Action Manufacturing Company</u>, 517 Pa. 183, 190, 535 A.2d 571, 574 (1987).

_____

[2]     The Court notes that the term "reverse piercing of the corporate veil" has a specific legal meaning which does not comport with RWLS's usage of the term. "In a reverse piercing, assets of the corporate entity are used to satisfy the debts of a corporate insider so that the corporate entity and the individual will be considered one in the same." <u>In re LMcD, LLC</u>, 405 B.R. 555, 563 (M.D. Pa. 2009)(internal quotations omitted).

The Court's research has not unearthed a case discussing whether this separateness would preclude a parent from recovery for damages allegedly suffered by its wholly owned subsidiary, but finds an appropriate analogy in those cases discussing the inverse question of parent liability for injuries caused by its subsidiaries under the mere instrumentality or alter ego theory. Under this theory, "courts may pierce the corporate veil 'whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests.'" Stilwell Value Partners v. Prudential Mutual Holding Company, Civ. No. 06-4432, 2008 WL 1900945, at *12 (E.D.Pa. April 24, 2008)(quoting Ashley v. Ashley, 482 Pa. 228, 237, 393 A.2d 637, 641 (1978). Conversely, then, a parent that is a mere instrumentality of a subsidiary should be entitled to recover for damages suffered by the subsidiary.

To establish that one corporation is the "mere instrumentality" of another, a plaintiff must demonstrate "that the controlling corporation wholly ignored the separate status of the controlled corporation and so dominated and controlled its affairs that its separate existence was a mere sham." Culbreath v. Amosa, Ltd., 898 F.2d 13, 14 (3d Cir.1990). Pennsylvania courts consider a number of factors when determining whether a parent and a subsidiary are truly separate entities including, but not limited to:

> [F]ailure to observe corporate formalities; non-payment of dividends; insolvency of debtor corporation; siphoning the funds from corporation by dominant shareholders; non-functioning of other officers and directors; absence of corporate records; whether the corporation is a mere facade for the operations of a common shareholder or shareholders; and gross undercapitalization.

Eastern Minerals & Chemicals Company v. Mahan, 225 F.3d 330, 334 n. 7 (3d Cir. 2000) (citations omitted).

The pleadings in this case do not detail the type of facts that would allow the Court, utilizing the above-cited factors, to decide whether Gray and GWSI should be treated as separate entities. Nor does this situation evoke a scenario in which those factors seem completely relevant. The Court is not trying to decide if the parent/subsidiary structure is employed for some nefarious reason, as consideration of the listed factors seems to suggest, rather, it must determine whether Gary and GWSI are so intertwined that injury to one equates to injury to the other.

Here, Gray has averred that, through its 100 % ownership of Gray Parent, it is the 100% owner of GWSI. Gray is the party to the contract with Cassady, the alleged breach of which is the focus of this litigation. In addition, in each count of the complaint, Gray asserts that it has suffered monetary damages resulting from Cassady's breach of contract and Cassady's and/or RWLS's commission of the three tort causes of action flowing from Cassady's alleged breach of contract. The Court concludes that these facts, although

just barely, suffice to show that Gray has stated a plausible claim that it has suffered economic harm that precludes the entry of judgment on the pleadings in RWLS's favor.

B. <u>Cassady's Argument</u>

In support of its motion for judgment on the pleadings, Cassady contends that certain determinations made by the Court in conjunction with adjudication of Gray's motion for a preliminary injunction are "law of the case" and that Gray is now prohibited from re-litigating same. Specifically, Cassady urges that the Court's conclusions that the Option Agreement entered into between Cassady and the Gray is not enforceable, that the restrictive covenants in the agreement were overbroad and would "financially cripple Cassady," and that the Option Agreement bordered on the unconscionable because "it precluded Cassady from working in the industry for a two year period in exchange for nothing of value," (Mem. and Order at 9-10, January 13, 2010), negate further progress of Gray's cause of action.

As a general rule, decisions on preliminary objections do not constitute law of the case and the parties are free to litigate the merits during later phases. <u>University of Texas v. Camenisch</u>, 451 U.S. 390, 395 (1981). This is so because:

> [t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary

> injunction is customarily granted on the basis
> of procedures that are less formal and evidence
> that is less complete than in a trial on the
> merits. A party thus is not required to prove
> his case in full at a preliminary-injunction
> hearing, and the findings of fact and
> conclusions of law made by a court granting a
> preliminary injunction are not binding at trial
> on the merits.

Id.(citation omitted); New Jersey Hospital Association v. Waldman, 73 F.3d 509, 519 (3d Cir. 1995) (findings of fact and conclusions of law made on preliminary injunction motions do not foreclose findings or conclusions to the contrary based on the developed record).

While acknowledging that findings and conclusions in conjunction with preliminary injunction motions are not customarily afforded preclusive effect, Cassady nonetheless urges that the Court of Appeals for the Third Circuit's decision in McTernan v. City of York, 577 F.3d 521 (3d Cir. 2009), which outlines an exception to the general rule, compels this Court to rely upon its legal findings attendant to the preliminary injunction hearing and disposition to dismiss Gray's complaint in its entirety. In McTernan, the Third Circuit stated that, although such cases are rare, in some instances "a district court's findings and conclusions on a preliminary injunction motion could 'have preclusive effect if the circumstances make it likely that the findings are sufficiently firm to persuade the court that there is no compelling reason for permitting them to be litigated again.'" Id. at 530 (quoting Hawksbill Sea Turtle v.

<u>Federal Emergency Management Agency</u>, 126 F.3d 461, 474 n. 11 (3d
Cir. 1997).

In <u>McTernan</u>, the issue decided by the district court at
the preliminary injunction proceeding was whether the plaintiffs had
a right to protest on a handicapped entrance ramp to a health
facility.  After an evidentiary hearing, the district court held
that the plaintiff had **no** probability of success on the merits, that
the ramp was a non-public forum, and that it was reasonable for a
police officer to disallow the protesters from congregating on the
ramp because their assembly conflicted with the ramp's accessibility
requirements.  The district court then determined that these
conclusions effectively resolved the issues presented in the
Defendant's motion to dismiss.

In exploring whether the district court erred when it
dismissed the plaintiff's complaint by relying on findings and
conclusions it reached when it denied the plaintiff's motion for a
preliminary injunction, the Third Circuit decided that "the issues
on the two motions were exactly the same, Plaintiffs had a full
opportunity to present their arguments at the hearing on the
preliminary injunction - i.e., whether the ramp leading to the
facility is a public forum, and there is no reason to prolong the
inquiry." <u>Id</u>. at 531.  In reaching this conclusion, the Court
disagreed with the plaintiff's position that the district court was
required to accept as true the complaint's allegation that the ramp

was a public forum because that allegation was a legal conclusion which the district court need not credit in ruling on the motion to dismiss.

McTernan does not control the instant matter. First and foremost, this Court decided that Gray was unlikely to succeed on the merits, and did not declare, as did the district court in McTernan, that the plaintiff had no probability of success. Second, this Court's ruling that the Option Agreement was unenforceable and unconscionable was based upon the lack of evidence that Cassady received anything of value in exchange for agreeing to the terms of the restrictive covenants. Unlike McTernan, this determination resulted from a failure of the evidence presented at the hearing, and not because of Gray's inability to overcome an incontrovertible legal conclusion. In other words, the findings regarding enforceability and unconscionability made in conjunction with the preliminary injunction proceeding were not "sufficiently firm" to justify employing the mantle of preclusion. The Court's findings in this regard were instead preliminary as obviated by its observation that "if [Gray] ultimately prevails in the merits, an award of monetary damages would provide adequate relief." Mem. & Order, id. at 10.

C. Conclusion

For the reasons stated, the Defendants' motions for judgment on the pleadings will be denied. An appropriate order will

13

be entered.


Dated: June 30, 2010                    s/Robert C. Mitchell
                                        Robert C. Mitchell
                                        U.S. Magistrate Judge